Lawrence CELANO, Richard Thesing, and William Hefferon, individually and on behalf of all others similarly situated, Plaintiffs,

v.

MARRIOTT INTERNATIONAL, INC., a Delaware corporation, Defendant.

No. C 05–4004 PJH.

United States District Court, N.D. California.

April 18, 2007.

Mark Andrew Chavez, Kim E. Card, Nance Felice Becker, Chavez & Gertler LLP, Mill Valley, CA, Sidney M. Wolinsky, Kevin Martin Knestrick, Disability Rights Advocates, Berkeley, CA, for Plaintiffs.

Gregory F. Hurley, Stacey L. Herter, Greenberg Traurig, LLP, Costa Mesa, CA, Gerald L. Maatman, Jr., Seyfarth Shaw LLP, Chicago, IL, for Defendant.

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

HAMILTON, District Judge.

Plaintiffs' motion for class certification came on for hearing before this court on February 21, 2007. Plaintiffs, Lawrence Celano, Richard Thesing, and William Hefferon ("plaintiffs") appeared through their counsel, Nance F. Becker and Kevin Knestrick. Defendant, Marriott International, Inc. ("defendant" or "Marriott") appeared through its counsel, Gregory F. Hurley and Gerald L. Maatman. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES plaintiffs' motion for class certification, for the reasons stated at the hearing and as follows.

## BACKGROUND

This is a proposed class action arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the California Disabled Persons Act ("CDPA"), Cal. Civil Code §§ 54 *et seq.*, and California's Unruh Civil Rights Act, Cal. Civil Code § 51. Plaintiffs allege that defendant's failure to provide "accessible" or "single-rider" golf carts to allow disabled persons to play golf at defendant's courses violates these provisions. Plaintiffs seek a declaration that Marriott's polices are unlawful and an injunction requiring defendant to provide single-rider carts at each of its golf facilities. They do not seek damages.

Accessible golf carts are, according to plaintiffs, an "auxiliary aid" that golf courses must provide under the ADA, which prohibits "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such ... services ... to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such ... services ...." 42 U.S.C. § 12182(b)(2)(A)(ii). Plaintiffs allege Marriott's practices violate California law for the same reasons. The CDPA provides that "[i]ndividuals with disabilities ... have the same right as the general public to the full and free use of ... public facilities, and other public places." Cal. Civ.Code § 54(a). The Unruh Civil Rights Act protects the right of California residents to "full and equal accommodations ... in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b). A violation of Title III of the ADA is a violation of both California statutes. Cal. Civ.Code §§ 51(f), 54(c).

Plaintiffs filed their original complaint in this court on October 4, 2005 and amended their complaint on October 18, 2006. All three named plaintiffs indicate that they require a single-rider cart to play golf: Mr. Celano sustained a spinal cord injury while serving in the United States Army and must use a wheelchair; Mr. Thesing suffers from a mobility disability due to a driving accident and must use a wheelchair; and Mr. Hefferon has limited use of the left side of his body due to a stroke. A single-rider cart is a specially designed golf cart that allows individuals with mobility disabilities to hit the golf ball while sitting in the cart. Most of these carts contain a swivel seat that rotates, allowing the individual to hit the golf ball while seated. The carts also contain hand brakes and accelerators to allow mobility-impaired users to drive them.

Marriott owns and operates hotels and resorts around the country, many of which include golf courses. Plaintiffs state they have contacted several Marriott-owned golf resorts expressing an interest in playing at the resort's golf courses and requesting a single-rider golf cart. Each plaintiff was told

that Marriott does not maintain single-rider carts at its courses. Messrs. Celano and Thesing then wrote letters to Marriott complaining about the lack of single-rider carts. In response, Marriott informed them that it was not required by current ADA rules to maintain single-rider golf carts. While Marriott informed plaintiffs that they could bring their own single-rider carts to its courses, plaintiffs claim this is impractical because: 1) the carts are too difficult to load on and off of a trailer; and 2) they cannot bring their own carts when traveling out of state.

Defendant contends that there are no existing laws requiring that a golf course owner provide single-riders cart for disabled golfers, and that the United States Department of Justice ("DOJ") is still in the process of considering whether, and under what circumstances, a golf course must provide such carts. The United States Access Board (a federal agency devoted to accessibility for the disabled) issued revised accessibility guidelines under the ADA on July 23, 2004 that address access in golf facilities, but do not require that golf facilities provide single-rider carts. Defendant therefore contends that it cannot be liable in the absence of the DOJ's rulemaking. Plaintiffs concede that DOJ regulations do not require Marriott to provide single-rider carts. They argue, however, that Marriott violates the ADA and California law because defendant's policies: 1) deny them the opportunity to fully enjoy Marriott's golfing accommodations; 2) deprive them of auxiliary aides and services they need to play golf; and 3) constitute an arbitrary refusal to modify their practices to ensure equal access to plaintiffs and potential class members.

Plaintiffs now seek certification of a national class and a California subclass representing individuals with mobility disabilities who require an accessible golf cart to secure equal access to Marriott owned or operated golf courses. Plaintiffs' motion for class certification includes declarations from twenty-one potential class members, essentially stating they are avid golfers and would play at Marriott courses were single-rider carts available.

## DISCUSSION

### A. Legal Standards

■ In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b). As a threshold to class certification, plaintiffs must satisfy four prerequisites under Rule 23(a). First, the class must be so numerous that joinder of all members individually is "impracticable." *See* Fed.R.Civ.P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). And fourth, the person representing the class must be able to protect fairly and adequately the interests of all members of the class. Fed.R.Civ.P. 23(a)(4). The parties moving for class certification bear the burden of establishing that the Rule 23(a) requirements are satisfied. *Gen'l Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which named plaintiffs must establish that either 1) there is a risk of substantial prejudice from separate actions; or 2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or 3) common questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue. *See* Fed.R.Civ.P. 23(b)(3).

■ The court does not make a preliminary inquiry into the merits of plaintiffs' claims in determining whether to certify a class. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). It will, however, scrutinize plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class wide basis. *See, e.g., Moore v. Hughes Helicopters, Inc.* 708 F.2d 475, 480 (9th Cir.1983). In doing so, the court must accept the substantive allegations contained in plaintiffs' complaints as true, but will consider matters beyond the pleadings in order to ascertain whether the asserted claims or defenses are susceptible of resolution on a class wide basis. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1419 n. 8 (D.C.Cir.1984).

### B. Plaintiffs' Motion

#### 1. Numerosity

■ FRCP 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In order to satisfy this requirement, plaintiffs need not state the "exact" number of potential class members, nor is there a specific number that is required. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D.Cal.2005). The numerosity requirement ensures that the class action device is used only where it would be inequitable and impracticable to require every member of the class to be joined individually. Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (2006) § 10:258. However, "impracticable" does not mean "impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 557, 561 (N.D.Cal.1999).

Plaintiffs argue that the proposed class meets this requirement because there are thousands of mobility-impaired individuals who enjoy playing seated golf. Plaintiffs submit 21 declarations from individuals who are mobility-impaired golfers (including the three named plaintiffs) that state they would play at defendant's golf courses if accessible carts were available there. Essentially, these declarants would play, would like to play, or would try to play at a Marriott golf course if accessible carts were available. *See* Baker Decl. ¶¶ 13–15; Caywood Decl. ¶ 6; Celano Decl. ¶ 12; Christensen Decl. ¶ 8; Ebel Decl. ¶ 14; Flood Decl. ¶ 8; Gerard Decl. ¶ 6; Gilmer Decl. ¶ 12; Halcomb Decl. ¶ 6; Hefferon Decl. ¶ 11; Hejl Decl. ¶ 10; Hughes Decl. ¶ 7; McDonald Decl. ¶ 10; Moran Decl. ¶ 8; Nicholas Decl. ¶ 8; Owen Decl. ¶ 9; Pagano Decl. ¶ 8; Schmonsees Decl. ¶ 9; Thesing Decl. ¶¶ 25, 27, 30; Vincent Decl. ¶ 12, Yaksic Decl. ¶ 12. The declarants do not state that they would play regularly at Marriott's courses; rather, they

indicate they would play Marriott's courses in addition to other courses, often when traveling to certain locations, such as Arizona or Palm Springs. *See id.*

Plaintiffs also argue that potential class membership is much broader than the 21 declarants, citing census statistics and association data as support, including: 1) recent census statistics showing that 25 million individuals have ambulatory disabilities, 2.7 of those disabled individuals use a wheelchair, and 51.2 million people have disabilities affecting their ability to perform a major activity; 2) Paralyzed Veterans Association (an organization with over 20,000 members) statistics showing that 21 % of its members are interested in golf and 6% participate in golf; 3) Mobility Impaired Golf Association's estimation that two million people would be "ready to enter the game of golf if conditions were more amenable"; and 4) National Golf Foundation's statistic that 28 million people (13.4% of adults) play golf. *See* Thesing Decl. ¶ 38, 39; Krieger Decl. ¶¶ 4, 9; Martin Decl. ¶ 3. Applying the percentage of adults who play golf to the number of adults who need assistive devices to walk, plaintiffs conclude that there are 1.5 million disabled golfers. *See* Thesing Decl. ¶ 39. Given the number of Marriott's courses and the geographical diversity of disabled golfers, plaintiffs contend that the proposed national class satisfies the numerosity requirement.

Defendant counters that a class of 21 members is, on its face, insufficient to certify a class. Plaintiffs have not established how many mobility-impaired golfers actually attempted to access one of Marriott's courses and could not do so because of the lack of accessible golf carts. The census figures and raw population data are overbroad and insufficient to establish numerosity, according to defendant. Beyond this speculative data, plaintiffs can only point to a handful of individuals who would be class members.

■ The ultimate issue in evaluating this factor is whether the class is too large to make joinder practicable, but courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer. *See*

*Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995); *Ansari v. New York Univ.,* 179 F.R.D. 112, 114 (S.D.N.Y.1998). While the potential class is likely geographically diverse because Marriott has courses throughout the United States, and the class is not readily identifiable, plaintiffs have submitted declarations of only 21 individuals in support of numerosity. Assuming these declarations establish that these individuals attempted to play at the Marriott and could not, or wanted to play there but were deterred by the absence of single-rider carts, these facts are still limited to these 21 individuals. This is insufficient for class certification, as it would not be impracticable to join these individuals in suit.

Plaintiffs' census data and statistics are too ambiguous and speculative to establish numerosity. Plaintiffs first ask the court to infer from them that many mobility impaired individuals who do not currently play golf, would like to. Then they ask the court to infer that many of the mobility impaired individuals who would like to play golf would play at the Marriott if carts were available, without providing any information about why this inference should be made given that Marriott represents very the high-end of golf courses when compared to public courses. More significantly, plaintiffs' data provides no insight into how many disabled people who would like to play golf, at Marriott courses, are deterred from doing so because of the absence of single-rider carts. *See Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1136–37 (9th Cir.2002) ("once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury").

For example, while the Mobility Impaired Golf Association estimates that two million people would play golf if "conditions were amenable," the statistics fail to specify what conditions would have to be changed to afford the accommodation needed by two million disabled golfers with a wide range of disabilities. This statistic does not answer the question whether a single-rider cart is needed by each of these two million would-be

golfers or whether such a cart would enable them to play. Plaintiffs' own evidence indicates that provision of single-rider carts would still not enable many mobility impaired individuals to play golf, because they require "increased accessibility, independence, education, and reduction of social-acceptance barriers" in order to play. *See* Martin Decl. ¶ 3. With no information about the nature of these individuals' impairments and whether the lack of single-rider carts is the only or main impediment to playing golf, the court has no means of determining how many disabled players would golf at the Marriott were single-rider carts provided.

As previously noted, plaintiffs must show that they and potential class members both would play at Marriott courses and were deterred from doing so because of the absence of single-rider carts. The statistical and census information, unlike the proffered declarations, at most shows that some disabled golfers would play golf if some accommodation were made. It does not show, however, 1) whether they were deterred from playing golf, 2) whether they were deterred from playing golf at Marriott specifically, or 3) whether they were deterred from playing golf at the Marriott by the absence of single-rider carts as opposed to some other accommodation not at issue here.

Plaintiffs rely on *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D.Cal.1994) for the proposition that they may rely on census data here. In *Arnold*, disabled persons who used wheelchairs or were semi-ambulatory brought suit under the ADA and CDPA, alleging that United Artists movie theaters did not provide equal access to disabled persons. *See* 158 F.R.D. at 443. The class was defined as disabled persons denied adequate access to United Artist's movie theater in Emeryville, California. *Id.* at 444. The court found that the numerosity requirement was satisfied based on data indicating that: 1) there are 875,000 wheelchair and semi-ambulatory persons in California; and 2) movies are an important form of recreation, especially for disabled persons who live independently. *Id.* at 448. The present case is distinguishable for a number of reasons. First, data that movies *are currently* a form of recreation for disabled individuals is far less speculative than the data here, which shows that disabled individuals *would* play golf if accessibility, independence, education, and social-acceptance barriers were reduced. Second, movie-going is a more affordable and widespread activity than golf, and movie theaters vary far less in terms of price and quality than do golf courses, and they are more numerous and readily available than golf courses.

The court does not expect or require that plaintiffs show the number of potential class members with certainty. But the court does expect that any common sense inferences that plaintiffs urge the court to make, be based upon something other than rank speculation untethered to real facts. Plaintiffs and their attorneys are active in disability rights organizations like the Mobility Impaired Golf Association and the Paralyzed Veterans Association. Yet there is no indication that the disabled membership of any of the organizations referenced in plaintiffs' papers have been polled on their interest and/or attempts to play at Marriott courses. Absent that kind of information, plaintiffs fail to link their population data to the alleged violation and injury at issue here. *See, e.g., Green v. Borg–Warner Protective Servs. Corp.*, 1998 WL 17719, *3–4, 1998 U.S. Dist. LEXIS 292, *11–13 (S.D.N.Y. Jan. 15, 1998) (fact that four thousand single adult men and women reside in shelters on any given day, along with some reports of assault and misconduct at shelters, does not establish numerosity); *Jeffries v. Pension Trust Fund*, 172 F.Supp.2d 389, 394 (S.D.N.Y.2001) (while plaintiff alleged that a large number of union's members were unemployed, it failed to proffer evidence of how many laid-off members suffered the alleged injury; noting that while the court may make "common sense assumptions to support a finding of numerosity," it may not "do so on the basis of pure speculation without any factual support") (citations omitted).

In view of the above, the court finds that plaintiffs have not satisfied the numerosity requirement of FRCP 23(a)(1).

## 2. Commonality

■ The second requirement under Rule 23(a) is that there must be questions of law or fact common to the class. Fed.R.Civ.P. 23(a) (2). The fact that there is some factual variation among the class grievances will not defeat a class action—a common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *Rosario v. Livaditis,* 963 F.2d 1013, 1017–18 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). This factor can be met by raising a single common issue that is central to the case. *See Staton v. Boeing,* 327 F.3d 938, 954–56 (9th Cir.2003).

■ Plaintiff argues that the key questions for decision—whether golf courses open to the public must provide single-rider golf carts for their mobility-impaired players, and whether Marriott is liable as an operator and owner of golf courses—are common to and determinative of all class members' claims. The court agrees. These are common questions that all plaintiffs must address. The question of whether the ADA requires Marriott to provide single-rider golf carts encompasses numerous legal questions common to the class (such as whether Marriott is liable as an operator under the ADA and whether providing accessible carts is a reasonable modification under the ADA), as well as factual questions common to the class (such as whether providing single-rider carts would impose an undue burden or cause damage to defendant's golf courses).

Plaintiffs' failure to agree on the exact model or brand of cart required, the number of carts required, and other remedial factors does not defeat commonality, as defendant argues, because plaintiff has raised a common issue central to the case—the alleged existence of the common discriminatory practice. *See Staton,* 327 F.3d at 954–56; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998) (commonality can be satisfied either by shared legal issue with divergent factual predicates or by common core of facts with disparate legal remedies).

Accordingly, the court finds that plaintiffs have satisfied the commonality requirement of FRCP 23(a)(2).

## 3. Typicality

■ The third requirement under Rule 23(a) is that the claims or defenses of the class representatives must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). This does not require that claims of the representative party be identical to the claims of class members. Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (2006) § 10:289. Rather, typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent. *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997), *cert. denied,* 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998). In practice, the commonality and typicality requirements of Rule 23 "tend to merge." *Gen'l Tel. Co. Of Southwest,* 457 U.S. at 158 n. 13, 102 S.Ct. 2364.

■ Each named plaintiff claims he attempted to play at Marriott golf courses, but was deterred from doing so because of Marriott's policy of not providing single-rider golf carts. Proposed class members' claims are based on the same legal theory. Defendant argues that plaintiffs' claims are not typical, because Mr. Hefferon is a country club member who mostly plays at his country club course and has not played at the Marriott. However, Mr. Hefferon stated that he has contacted Marriott courses, attempted to set up a tee time, but was told they could not provide him with an accessible cart. *See* Hefferon Decl. ¶ 11. Because he tried to play at a Marriott course and was deterred from doing so, he has standing to sue and makes the same claim that potential class members would have. *See Pickern,* 293 F.3d at 1136–37 (plaintiff has suffered an injury under the ADA once plaintiff has become aware of discriminatory conditions and is deterred from visiting that accommodation). Named plaintiffs and proposed plaintiffs also request the same relief: declaratory and injunctive relief. Accordingly, the court finds the typicality requirement of FRCP 23(a)(3) is satisfied.

#### 4. Adequacy

■ The fourth requirement under Rule 23(a) is adequacy of representation. The court must find that named plaintiffs' counsel is adequate, and that named plaintiffs can fairly and adequately protect the interests of the class. Legal adequacy is determined by resolution of two questions: 1) whether named plaintiffs and their counsel have any conflicts with class members; and 2) whether named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon,* 150 F.3d at 1020. Generally, representation will be found to be adequate when the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures,* 582 F.2d 507, 512 (9th Cir.1978).

■ Here, both requirements are met. There are no discernible conflicts of interest between the named plaintiffs and the absent class members. Named plaintiffs allege that all members of the proposed class would play at Marriott golf courses, but are deterred from doing so because of Marriott's policy of not providing single-rider golf carts; all suffer similar injury as a consequence of the violation; and all seek the same general relief. While, as defendant argues, the named plaintiffs do not agree on the number of special carts Marriott should be required to have or the brand of carts, they are familiar with the basic elements of the case. They also seek the same basic remedy—that Marriott carry some type of golf cart to accommodate disabled individuals who must sit in the cart while golfing. Their interests are not antagonistic to the remainder of the class. *See Lerwill,* 582 F.2d at 512.

Nor does defendant's claim that plaintiffs are not proper representatives because they do not seek money damages defeat a finding of adequacy. Plaintiffs' decision not to seek money damages is only relevant to the California subclass, as monetary damages are not recoverable under Title III of the ADA. But even with regards to this subclass, defendant has not demonstrated that monetary damages would likely be awarded in a case like the present case. Nor would a judgment in this case bar others from pursuing damages, as plaintiffs have never raised any damages issues. *See Hiser v. Franklin,* 94 F.3d 1287, 1291 (9th Cir.1996) ("the general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events").

As for the second requirement, the evidence and history of the instant litigation demonstrate that plaintiffs have retained skilled and experienced counsel to represent them in their proceedings against defendant. Whether plaintiffs are wealthy enough to finance the litigation is irrelevant. *See, e.g., Moeller v. Taco Bell Corp.,* 220 F.R.D. 604, 612 (N.D.Cal.2004) ("to deny a class whenever plaintiff's counsel advances significant funds to plaintiffs of little or modest means would be to defeat the very purposes which class actions were designed to achieve") (citation omitted). Accordingly, the court finds that the adequacy requirement of FRCP 23(a)(4) is satisfied.

However, having found that class certification must be denied on the basis of plaintiffs' failure to establish numerosity, the court does not reach the question whether the requirements of Rule 23(b) (2) are met.

### CONCLUSION

For the foregoing reasons, the court hereby DENIES plaintiffs' motion for class certification.

IT IS SO ORDERED.